UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────

MICHAEL E. JONES, M.D., P.C.,
                          Plaintiff,

                -v-

AETNA, INC., JOHN DOE ENTITIES 1-10,
                          Defendants.

19-CV-9683 (JPO)

OPINION AND ORDER

────────────────────────────────

J. PAUL OETKEN, District Judge:

      Plaintiff Michael E. Jones, M.D., P.C. claims that Defendant Aetna, Inc. violated various provisions of the Sherman Act, the Employee Retirement Income Security Act ("ERISA"), and New York law when Aetna denied or otherwise failed to process and approve Plaintiff's medical claims. Aetna now moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Aetna's motion is granted in part and denied in part.

**I.    Background**

      Plaintiff is a plastic surgery practice in New York. (Dkt. No. 21-1 at 2.) Plaintiff does not contract with Aetna to provide services to Aetna's insureds and thus is not an in-network provider for those insureds. (Dkt. No. 21-1 at 4.) Plaintiff alleges that it confirms with Aetna the scope of its insureds' out-of-network coverage before performing any procedure. (Dkt. No. 21-1 at 5.) Plaintiff further alleges that Aetna's insureds assign their insurance benefits and rights to Plaintiff, that Plaintiff files claims for reimbursement with Aetna, and that Aetna "routinely reviewed and approved" such claims before January 1, 2019. (Dkt. No. 21-1 at 5–6.) Plaintiff brings this case with respect to Aetna's processing of claims on or after January 1, 2019. (Dkt. No. 21-1 at 6.)

1

Plaintiff alleges that, starting on January 1, 2019, its claims were "delayed, mishandled, or denied for specious or improper reasons." (*Id.*) Aetna's "most common" reason for denying Plaintiff's claims was Plaintiff's supposed failure to submit medical records in support of the claims. (Dkt. No. 21-1 at 7.) Plaintiff refers to this reason as "pretextual" and "demonstrably false in light of the actual supporting documentation submitted." (*Id.*)

When Plaintiff appealed denials of its claims, Aetna allegedly affirmed the denials or delayed rendering a decision. (*Id.*) Aetna reclassified appeals as "reconsiderations," a move that Plaintiff believes "delayed the appeals process" and "deprived Plaintiff of its right to appeal." (*Id.*) In September 2019, Plaintiff called Aetna to inquire about the processing of certain claims and was informed, for the first time, that "Plaintiff ha[d] been flagged" in January 2019 and that "all of [] Plaintiff's claims" were being referred to Aetna's department for investigating fraud. (Dkt. No. 21-1 at 9.) Plaintiff requested information on why Aetna had flagged Plaintiff's practice, and Aetna failed to respond to the request. (*Id.*)

On October 21, 2019, Plaintiff filed this lawsuit. (*See* Dkt. No. 1.) Plaintiff seeks compensatory and injunctive relief on a broad range of legal theories, ranging from Aetna's supposed violation of federal antitrust laws to its purported commission of common law fraud. (*See* Dkt. No. 7.) On January 28, 2020, Aetna filed its motion to dismiss for failure to state a claim under Rule 12(b)(6). (*See* Dkt. No. 14.) In addition to opposing the motion to dismiss, Plaintiff amended the Complaint on February 14, 2020, to address certain of Aetna's arguments about the sufficiency of the pleadings. (*See* Dkt. No. 21.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In

2

considering the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) (citation omitted). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

### III.   Discussion

Plaintiff claims that, through the alleged conduct, Aetna: (i) monopolized or attempted to monopolize the health insurance market in violation of Sherman Act § 2, 15 U.S.C. § 2; (ii) violated the terms of its insureds' plans, thereby entitling Plaintiff — the insureds' assignee — to damages and injunctive relief under ERISA § 502(a)(1) and (3), 29 U.S.C. § 1132(a)(1) and (3); (iii) violated its fiduciary duties with respect to its insureds' plans, thereby entitling Plaintiff to damages and injunctive relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2); and (iv) violated New York law. Aetna first counters that the antitrust claim fails because Plaintiff has not sufficiently alleged Aetna's monopoly power in the relevant market or Aetna's willful acquisition and maintainence of such power. Aetna then argues that the ERISA claims fail because Plaintiff has not exhausted administrative remedies, has brought duplicative claims under § 502(a)(1) and (3), and has not satisfied the requirements of § 502(a)(2). Finally, Aetna asserts that the state law claims fail because they relate to the insureds' ERISA-regulated plans and are thus preempted by ERISA. The claims are considered in turn.

#### A.   Plaintiff's Sherman Act § 2 Claim

Extrapolating from its own experience, Plaintiff speculates that Aetna's failure to process and approve the reimbursement claims was part of a broader scheme to penalize out-of-network providers for their refusal to conclude contracts with Aetna. (Dkt. No. 21-1 at 16.) Plaintiff

hypothesizes that Aetna was trying to force it and other out-of-network providers to go in-network or otherwise disadvantage them relative to in-network providers.  (*Id*.)  Plaintiff claims that this is anticompetitive conduct that violates Sherman Act § 2.  (*Id*.)

Section 2 prohibits entities from "monopoliz[ing], or attempt[ing] to monopolize, . . . any part of the trade or commerce among the several States."  15 U.S.C. § 2.  The "offense of monopoly" under § 2 has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966).  Attempted monopolization under § 2 has three elements: (1) the defendant's "predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power" in "the relevant market."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

Aetna contends that Plaintiff has not alleged Aetna's possession or dangerous probability of achieving monopoly power.  The Complaint estimates that Aetna has a "4.5% market share of the health insurance market in the United States and 33% market share in New York."  (Dkt. No. 21-1 at 3.)  These allegations are plainly insufficient to support a § 2 claim.  The Second Circuit has previously stated that "33% of [the] relevant market is 'certainly' not a monopoly," *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 742 (2d Cir. 1989) (citation omitted), and district courts regularly "reject[] even higher market shares between 30 percent and 40 percent as inadequate to demonstrate market power," *Drug Emporium, Inc. v. Blue Cross of Western New York, Inc.*, 104 F.Supp.2d 184, 190 (W.D.N.Y. 2000) (collecting cases).  Whether one views the relevant market as the national health insurance market or the New York market, Aetna does not possess or have a dangerous probability of achieving monopoly power.

Realizing that Aetna does not in fact control a dominant share of the market, Plaintiff suggests that the Complaint nonetheless alleges Aetna's monopoly power, or "ability to control prices or exclude competition," because it explains how Aetna "has systematically engaged in conduct meant to exclude competition." (Dkt. No. 20 at 8.)  The Complaint, however, is bereft of facts indicating whether or how Aetna's supposed conduct actually excluded or is likely to exclude competition in the health insurance market.  Section 2 is implicated only when intentional, anticompetitive conduct does or is liable to control prices and exclude competition, hence its requirement that plaintiffs establish not only misconduct but also market power.  To hold otherwise would collapse the several elements of a § 2 claim into just one.  Plaintiff has not plausibly pleaded a violation of § 2 of the Sherman Act.

### B. Plaintiff's ERISA Claims

Plaintiff brings claims under each of ERISA § 502(a)(1), (2), and (3).  Aetna challenges these claims altogether, arguing that Plaintiff has failed to plead exhaustion of administrative remedies.  (Dkt. No. 15 at 9–10.)  Although Aetna correctly identifies that plaintiffs generally must exhaust administrative remedies before bringing an ERISA action, *see Paese v. Hartford Life and Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006), Aetna incorrectly suggests that plaintiffs must amply plead exhaustion.  The Second Circuit has identified the failure to exhaust administrative remedies as an affirmative defense, *id*. at 446, and such defenses "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6)" when "the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  The question, then, is whether the Complaint plainly sets forth Plaintiff's failure to exhaust administrative remedies.

The defense appears on the face of the complaint when the plaintiff, as an example, "explicitly admit[s] a conscious decision not to exhaust." *Leak v. CIGNA Healthcare*, 423

5

F.App'x 53, 54 (2d Cir. 2011).  District courts within this Circuit have also considered the defense on a Rule 12(b)(6) motion when the plaintiff "pleads *no* facts suggesting any effort to exhaust the remedies available through his ERISA administrative plan." *Abe v. New York University*, No. 14-cv-9323, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (citation omitted) (emphasis added); *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F.Supp.3d 275, 293 (E.D.N.Y. 2014) (dismissing an ERISA claim because of the plaintiff's "failure to plead *any* exhaustion of administrative remedies" (citation omitted) (emphasis added)).  In this case, Plaintiff's failure to exhaust is not manifestly apparent from the Complaint.

Here, the Complaint alleges that Plaintiff attempted to appeal denials of its claims through Aetna's internal procedures.  It alleges that Plaintiff's appeals were denied or reclassified and indefinitely delayed.  At the pleading stage, this suffices.  Plaintiff has exhausted administrative remedies with respect to any claim that Aetna denied after an appeal.  Furthermore, Plaintiff has plausibly pleaded that it exhausted administrative remedies with respect to the claims that Aetna purportedly reclassified and indefinitely delayed.  29 C.F.R. § 2560.503-1(*l*)(1) provides that "a claimant shall be deemed to have exhausted the administrative remedies available under [an ERISA] plan" when the plan fails to "follow claims procedures consistent with the requirements" imposed by Department of Labor regulations.  29 C.F.R. § 2560.503-1(*i*) and (*j*) require insurers to resolve appeals within 120 days, at most, and to provide unsuccessful claimant-appellants with information including "[t]he specific reason or reasons for the adverse determination."  As Plaintiff first noticed irregularities with Aetna's claims processing on January 1, 2019, and filed this case almost 300 days later, it is reasonable to infer that Aetna has not complied with Department of Labor regulations requiring the timely resolution of appeals.  That Plaintiff learned of the referral of its claims to Aetna's department

for investigating fraud from a September 2019 phone call, rather than from a written or electronic notification affirmatively sent by Aetna, suggests that Aetna has not complied with Department of Labor regulations requiring certain information to be provided to unsuccessful claimant-appellants. The pleadings allow the Court to reasonably infer that Aetna failed to comply with the relevant regulations and thus that Plaintiff exhausted administrative remedies.

Separate from the exhaustion argument, Aetna challenges Plaintiff's § 502(a)(3) claim on the basis that it seeks the same equitable relief that Plaintiff seeks under § 502(a)(1). (Dkt. No. 24 at 7–9.) Section 502(a)(3) is one of the "catchall" provisions of ERISA that "offer[s] appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). When the relief a plaintiff seeks is provided elsewhere in § 502, relief under § 502(a)(3) is not "appropriate." *Id*. at 515; *see also Pelosi v. Schwab Capital Mkts., L.P.*, 462 F.Supp.2d 503, 514–15 (S.D.N.Y. 2016) (dismissing a plaintiff's § 502(a)(3) because it was duplicative of his § 502(a)(1) claim). The Complaint seeks "relief to enforce the terms of the Plan/s and to clarify Plaintiff's right to future benefits under such plans." (Dkt. No. 21-1 at 13.) This is precisely the relief available under § 502(a)(1). The Complaint does not seek "equitable remedies that transcend [an ERISA] plan," such as estoppel or reformation, nor does it allege facts suggesting that any such remedies would be appropriate here. *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 98–99 (2d Cir. 2020). Accordingly, the Court agrees that Plaintiff's § 502(a)(3) claim is duplicative of its § 502(a)(1) claim and must be dismissed.

Aetna also specifically challenges Plaintiff's § 502(a)(2) claim on the basis that it seeks individual relief, rather than relief on behalf of a plan. (Dkt. No. 15 at 11–12.) The Supreme Court has explained that recovery under § 502(a)(2), for a breach of ERISA fiduciary duties,

"inures to the benefit of the plan." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). Section 502(a)(2) envisions the removal of a deficient fiduciary, *id.* at 142, not compensatory damages for beneficiaries, *id.* at 144. This "bars plaintiffs from suing under Section 502(a)(2) [when they] are seeking damages on their own behalf, not on behalf of the Plan." *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). That the relief sought under § 502(a)(2) must benefit a plan, rather than an individual beneficiary, obligates plaintiffs to "take adequate steps under the circumstances . . . to act in a 'representative capacity on behalf of the plan.'" *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (quoting *Russell*, 473 U.S. at 142 n.9); *see also Smith v. Med. Benefit Adm'r Grp., Inc.*, 639 F.3d 277, 283 (7th Cir. 2011) (concluding that plaintiffs seeking § 502(a)(2) relief with respect to group health insurance plans must proceed on behalf of the plan as a whole because such plans "typically hold[] no assets in trust for any individual participant"). Despite this, the Complaint seeks damages on Plaintiff's behalf. (Dkt. No. 21-1 at 15.) Furthermore, and to the extent that the Complaint seeks equitable relief, Plaintiff has taken no steps indicating that it has "discharged [its] duty to proceed on behalf of the plan." *Coan*, 457 F.3d at 261 (suggesting that a party bringing a § 502(a)(2) claim may "make[] a good-faith effort to join other participants as parties pursuant to Rule 19" or "comply with Rule 23 to act as a representative of other plan participants").

Plaintiff's § 502(a)(2) and (3) claims fail as a matter of law. Plaintiff, however, may proceed with its § 502(a)(1) claim, which Aetna does not address beyond its exhaustion argument.

### C. Plaintiff's State Law Claims

Finally, Plaintiff brings five state law claims for Aetna's supposed violation of New York Insurance Law § 3224-a, breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and fraud. (Dkt. No. 21-1 at 18–25.) Each of these claims

revolves around Aetna's failure to promptly review and approve the reimbursements Plaintiff requested under its patients' plans.  As Aetna argues, Plaintiff's state law claims are preempted by ERISA.

ERISA § 514(a) provides that the ERISA regime "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  This preemption provision is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern."  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (internal quotation marks and citation omitted).  Section 514(a) preempts state statutory claims to the extent that they "provide an alternative cause of action to employees to collect benefits protected by ERISA."  *Id*. at 114 (internal quotation marks and citation omitted).  The Section preempts state common law claims to the extent that they are used to "seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA."  *Id*. (internal quotation marks and citation omitted).

New York Insurance Law § 3224-a(a) and (b) set a different claims-processing schedule from the one required by ERISA under 29 C.F.R. § 2560.503-1(*i*).  Were it not preempted with respect to ERISA-regulated plans, § 3224-a(a) would provide an alternative cause of action for employees seeking benefits protected by ERISA and moreover would pose a "danger of undermining the uniformity of the administration of benefits that is ERISA's key concern."  *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 61 (2d Cir. 2010); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 217–18 (2004) ("[E]ven a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.").  And each of Plaintiff's

common law claims runs parallel to Plaintiff's ERISA claims and seeks benefits promised under ERISA-regulated plans. The Complaint extensively references and relies on these plans in pleading the state law claims. To illustrate, the Complaint's breach-of-contract pleadings state that "Defendants' failure to properly administer, process or pay the Subject Claims in the manner and amounts required under the terms of the Aetna Plan/s constitutes a material breach of the applicable Aetna Plan/s." (Dkt. No. 21-1 at 19.) These are precisely the kind of claims that § 514(a) is meant to foreclose. Because they are preempted by ERISA, Plaintiff's state law claims fail.

## IV. Conclusion

For the foregoing reasons, Aetna's motion to dismiss is GRANTED in part and DENIED in part. The Court deems the exhibit at Docket Number 21-1 the operative Complaint. Aetna shall file an answer to the Complaint within 21 days after the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 14.

SO ORDERED.

Dated: September 23, 2020
       New York, New York

                                                J. PAUL OETKEN
                                          United States District Judge